IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

| | |
|---|---|
| ContentGuard Holdings, Inc., ) | |
| ) | |
| *Plaintiff,* ) | |
| ) | |
| vs. ) | CA No. 1:12 cv 206 CmH /TCB |
| ) | JURY TRIAL DEMANDED |
| ZTE Corporation and ZTE (USA) Inc., ) | |
| ) | |
| *Defendants.* ) | |
| ) | |

## COMPLAINT FOR PATENT INFRINGEMENT

Plaintiff ContentGuard Holdings, Inc. ("ContentGuard"), for its Complaint against ZTE Corporation and ZTE Corporation (USA) Inc. (collectively, "Defendants") hereby alleges as follows:

### The Parties

1. Plaintiff ContentGuard is a corporation organized under the laws of the state of Delaware with its principal place of business at 222 N. Sepulveda Blvd., Suite 1400, El Segundo CA, 90245-5644. Having originated from within the legendary Xerox PARC, ContentGuard is an industry leading expert in digital rights management ("DRM") innovations. ContentGuard's highly skilled computer scientists have pioneered a vast array of DRM-related technologies and, as recognition for their achievements, have been awarded more than 260 patents. Now, having evolved from a purely R&D company, ContentGuard focuses on licensing and enabling the market in DRM technologies. ContentGuard's long history of innovation in the DRM space

makes it well suited to educate, enable, and promote DRM technologies in today's marketplace. Indeed, recognizing the value of ContentGuard's DRM patents, a diverse array of prominent technology companies—including Casio, NEC, Panasonic, and Sharp—have chosen to license ContentGuard's patents. Through their licensing partnerships with ContentGuard, these, and other leading technology companies have gained invaluable access to ContentGuard's many advances in DRM technologies.

2. Upon information and belief, Defendant ZTE Corporation is a joint stock limited company incorporated in the People's Republic of China with its principal place of business at ZTE Plaza, Keji Road South, Hi-Tech Industrial Park, Nanshan District, Shenzhen, Guangdong Province, 518057 People's Republic of China.

3. Upon information and belief, Defendant ZTE (USA) Inc. is a Corporation organized and existing under the laws of the state of New Jersey with its principal place of business at 2425 North Central Expressway, Suite 323, Richardson, Texas 75080.

4. Defendants directly or indirectly use, distribute, market, sell, and/or offer to sell throughout the United States, including in this judicial district, various telecommunication and other consumer products, including wireless communication and mobile computing devices, associated equipment, and software.

### Nature of the Action

5. This is an action brought by ContentGuard against Defendants for Defendants' infringement of ContentGuard's patents.

### Jurisdiction and Venue

6. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a) because this action arises under the patent laws of the United States.

7. This Court has personal jurisdiction over the Defendants because the Defendants have established minimum contacts with this judicial district. Defendants report having an office in this judicial district located in Herndon, Virginia; conduct substantial business in this judicial district, and regularly solicit business from, do business with and derive revenue from goods and services provided to, customers in this district; and have committed acts of infringement in this judicial district that remain ongoing. Defendants, directly and/or through third-party manufacturers, manufacture or assemble products that are and have been offered for sale, sold, purchased, and used within this judicial district. Defendants have publicized their business dealings in this judicial district, including a 2007 contract signing ceremony between Mr. Hou Wei-Gui, chairman of ZTE Corporation and Sprint Nextel Corporation ("Sprint") at Sprint's Herndon, Virginia offices. In addition, Defendant ZTE Corporation is an active member of the Third Generation Partnership Project 2 (3GPP2), an international research organization responsible for setting the international standards for third-generation wireless technology, which is based in Arlington, Virginia. ZTE Corporation is also a member of the Telecommunications Industry Association headquartered in Arlington, Virginia.

8. Given that Defendants transact business, provide services, and have committed acts of patent infringement in this judicial district, Defendants have minimum contacts with this district such that the exercise of jurisdiction over Defendants would not offend traditional notions of fair play and substantial justice. Venue is thus proper in this district pursuant to 28 U.S.C. §§ 1391(b), (c), (d) and 1400(b).

**The Patents in Suit**

9. On November 8, 2005, the United States Patent and Trademark Office duly and legally issued U.S. Patent No. 6,963,859 ("the '859 patent"), entitled "Content Rendering Repository." A true and correct copy of the '859 patent is attached hereto as Exhibit A.

10. On November 21, 2006, the United States Patent and Trademark Office duly and legally issued U.S. Patent No. 7,139,736 ("the '736 patent"), entitled "Content Rendering Repository." A true and correct copy of the '736 patent is attached hereto as Exhibit B.

11. On May 29, 2007, the United States Patent and Trademark Office duly and legally issued U.S. Patent No. 7,225,160 ("the '160 patent"), entitled "Digital Works Having Usage Rights And Method For Creating The Same." A true and correct copy of the '160 patent is attached hereto as Exhibit C.

12. On September 11, 2007, the United States Patent and Trademark Office duly and legally issued U.S. Patent No. 7,269,576 ("the '576 patent"), entitled "Content Rendering Apparatus." A true and correct copy of the '576 patent is attached hereto as Exhibit D.

13. On April 15, 2008, the United States Patent and Trademark Office duly and legally issued U.S. Patent No. 7,359,884 ("the '884 patent"), entitled "Method And Apparatus For Processing Usage Rights Expressions." A true and correct copy of the '884 patent is attached hereto as Exhibit E.

14. On April 21, 2009, the United States Patent and Trademark Office duly and legally issued U.S. Patent No. 7,523,072 ("the '072 patent"), entitled "System For Controlling The Distribution And Use Of Digital Works." A true and correct copy of the '072 patent is attached hereto as Exhibit F.

15. ContentGuard owns by assignment the entire right, title, and interest in and to the the '859 patent, the '736 patent, the '160 patent, the '576 patent, the '884 patent, and the '072 patent (collectively, "the Asserted Patents").

16. All of the Asserted Patents are valid and enforceable.

17. Upon information and belief, Defendants have infringed and continue to infringe one or more claims of each of the Asserted Patents by engaging in acts that constitute infringement under 35 U.S.C. § 271, including but not necessarily limited to making, using, selling, and/or offering for sale, in this district and elsewhere in the United States, and/or importing into this district and elsewhere in the United States, certain mobile communication and computing devices including cellular phones, smart phones, and tablets (collectively, "the Accused Products").

## FIRST CAUSE OF ACTION

### (Patent Infringement of the '859 Patent)

18. Paragraphs 1 through 17 are incorporated by reference as if fully stated herein.

19. Defendants have infringed and continue to infringe, literally or under the doctrine of equivalents, the '859 patent by making, using, selling, offering for sale within the United States, and/or importing into the United States, products that are covered by one or more claims of the '859 patent. Such products include certain mobile communication and computing devices such as cellular phones, smart phones, and tablets, including but not limited to the Sprint ZTE Optik, ZTE Warp (N860), ZTE Chorus (D930), ZTE Score (X500), ZTE Agent (E520), Cricket MSGM8 II, ZTE Essenze (C70), and ZTE C78.

20. Upon information and belief, Defendants have, and have had, knowledge of the '859 patent and of their infringement thereof at least as early as May 6, 2009. On that date, Mr. Kerry Philip Miller, the General Counsel of Intellectual Property for ContentGuard, sent correspondence to ZTE Corporation detailing ContentGuard's portfolio of patents related to DRM technologies, including a link to the full list of ContentGuard's DRM patents. Mr. Miller further notified ZTE Corporation regarding its infringing use of ContentGuard's intellectual property, and attempted to initiate licensing discussions among the parties. ZTE Corporation,

however, ignored Mr. Miller's correspondence. Thereafter, in correspondence dated March 21, 2011, Mr. James Baker, the Vice President of Licensing & Strategic Development for ContentGuard, again contacted ZTE Corporation regarding its infringing use of ContentGuard's patents related to DRM technologies. Mr. Baker again provided ZTE Corporation with the link to the complete list of ContentGuard patents related to DRM technologies, highlighted ZTE Corporation's infringing use of ContentGuard's patents, including ZTE Corporation's infringement of the '859 patent, and requested licensing discussions. Again, however, ZTE Corporation ignored ContentGuard's amicable attempts at licensing its intellectual property to ZTE Corporation. Later, in correspondence dated September 15, 2011, Mr. Baker again contacted ZTE Corporation regarding its infringing use of ContentGuard's patents related to DRM technologies, including the '859 patent, and again provided ZTE Corporation with the link to the complete list of ContentGuard patents related to DRM technologies. And again, ZTE Corporation ignored ContentGuard's amicable attempts at licensing its intellectual property to ZTE Corporation. On February 14, 2012, in ContentGuard's final attempt to amicably license its patents to Defendants, Mr. Baker again contacted ZTE Corporation, and again highlighted ZTE Corporation's infringing use of ContentGuard's DRM patents. A representative at ZTE (USA) Inc. responded to Mr. Baker's correspondence via email, and then Mr. Baker offered to provide claim charts and meet with ZTE (USA) Inc. as soon as ZTE (USA) Inc. had completed a non-disclosure agreement ("NDA") with ContentGuard. Mr. Baker additionally sent ZTE (USA) Inc. a NDA in the hopes of initiating licensing discussions. Although ZTE (USA) Inc. received the NDA, it has offered no further response to Mr. Baker's request for licensing discussions. Defendants' infringement of the '859 patent, made with knowledge of and/or willful blindness

toward the '859 patent, thus has been and continues to be willful and deliberate. Defendants' willful and deliberate infringement entitles Plaintiff to enhanced damages under 35 U.S.C. § 284.

21. Unless and until enjoined by this Court, Defendants will continue to infringe the '859 patent. Defendants' infringement is causing and will continue to cause Plaintiff irreparable harm, for which there is no adequate remedy at law. Under 35 U.S.C. § 283, Plaintiff is entitled to a permanent injunction against further infringement.

## SECOND CAUSE OF ACTION

### (Patent Infringement of the '736 Patent)

22. Paragraphs 1 through 21 are incorporated by reference as if fully stated herein.

23. Defendants have infringed and continue to infringe, literally or under the doctrine of equivalents, the '736 patent by making, using, selling, offering for sale within the United States, and/or importing into the United States, products that are covered by one or more claims of the '736 patent. Such products include certain mobile communication and computing devices such as cellular phones, smart phones and tablets, including but not limited to the Sprint ZTE Optik, ZTE Warp (N860), ZTE Chorus (D930), ZTE Score (X500), ZTE Agent (E520), Cricket MSGM8 II, ZTE Essenze (C70), and ZTE C78.

24. Upon information and belief, Defendants have, and have had, knowledge of the '736 patent and of their infringement thereof at least as early as May 6, 2009. On that date, Mr. Kerry Philip Miller, the General Counsel of Intellectual Property for ContentGuard, sent correspondence to ZTE Corporation detailing ContentGuard's portfolio of patents related to DRM technologies, including a link to the full list of ContentGuard's DRM patents. Mr. Miller further notified ZTE Corporation regarding its infringing use of ContentGuard's intellectual property, and attempted to initiate licensing discussions among the parties. ZTE Corporation, however, ignored Mr. Miller's correspondence. Thereafter, in correspondence dated March 21,

2011, Mr. James Baker, the Vice President of Licensing & Strategic Development for ContentGuard, again contacted ZTE Corporation regarding its infringing use of ContentGuard's patents related to DRM technologies, including the '859 patent, which claims priority to the same patent application as the '736 patent. Mr. Baker again provided ZTE Corporation with the link to the complete list of ContentGuard's patents related to DRM technologies, highlighted ZTE Corporation's infringing use of ContentGuard's patents and requested licensing discussions. Again, however, ZTE Corporation ignored ContentGuard's amicable attempts at licensing its intellectual property to ZTE Corporation. Later, in correspondence dated September 15, 2011, Mr. Baker again contacted ZTE Corporation regarding its infringing use of ContentGuard's patents related to DRM technologies, and again provided ZTE Corporation with the link to the complete list of ContentGuard patents related to DRM technologies. And again, ZTE Corporation ignored ContentGuard's amicable attempts at licensing its intellectual property to ZTE Corporation. On February 14, 2012, in ContentGuard's final attempt to amicably license its patents to Defendants, Mr. Baker again contacted ZTE Corporation, and again highlighted ZTE Corporation's infringing use of ContentGuard's DRM patents. A representative at ZTE (USA) Inc. responded to Mr. Baker's correspondence via email, and then Mr. Baker offered to provide claim charts and meet with ZTE (USA) Inc. as soon as ZTE (USA) Inc. had completed a non-disclosure agreement ("NDA") with ContentGuard. Mr. Baker additionally sent ZTE (USA) Inc. a NDA in the hopes of initiating licensing discussions. Although ZTE (USA) Inc. received the NDA, it has offered no further response to Mr. Baker's request for licensing discussions. Defendants' infringement of the '736 patent, made with knowledge of and/or willful blindness toward the '736 patent, thus has been and continues to be willful and deliberate. Defendants' willful and deliberate infringement entitles Plaintiff to enhanced damages under 35 U.S.C. § 284.

25. Unless and until enjoined by this Court, Defendants will continue to infringe the '736 patent. Defendants' infringement is causing and will continue to cause Plaintiff irreparable harm, for which there is no adequate remedy at law. Under 35 U.S.C. § 283, Plaintiff is entitled to a permanent injunction against further infringement.

### THIRD CAUSE OF ACTION

#### (Patent Infringement of the '160 Patent)

26. Paragraphs 1 through 25 are incorporated by reference as if fully stated herein.

27. Defendants have infringed and continue to infringe, literally or under the doctrine of equivalents, the '160 patent by making, using, selling, offering for sale within the United States, and/or importing into the United States, products that are covered by one or more claims of the '160 patent. Such products include certain mobile communication and computing devices such as the Sprint ZTE Optik.

28. Upon information and belief, Defendants have, and have had, knowledge of the '160 patent and of their infringement thereof at least as early as May 6, 2009. On that date, Mr. Kerry Philip Miller, the General Counsel of Intellectual Property for ContentGuard, sent correspondence to ZTE Corporation detailing ContentGuard's portfolio of patents related to DRM technologies, including a link to the full list of ContentGuard's DRM patents. Mr. Miller further notified ZTE Corporation regarding its infringing use of ContentGuard's intellectual property, and attempted to initiate licensing discussions among the parties. ZTE Corporation, however, ignored Mr. Miller's correspondence. Thereafter, in correspondence dated March 21, 2011, Mr. James Baker, the Vice President of Licensing & Strategic Development for ContentGuard, again contacted ZTE Corporation regarding its infringing use of ContentGuard's patents related to DRM technologies, including the '859 patent, which claims priority to the same patent application as the '160 patent. Mr. Baker again provided ZTE Corporation with the link to

the complete list of ContentGuard's patents related to DRM technologies, highlighted ZTE Corporation's infringing use of ContentGuard's patents and requested licensing discussions. Again, however, ZTE Corporation ignored ContentGuard's amicable attempts at licensing its intellectual property to ZTE Corporation. Later, in correspondence dated September 15, 2011, Mr. Baker again contacted ZTE Corporation regarding its infringing use of ContentGuard's patents related to DRM technologies, and again provided ZTE Corporation with the link to the complete list of ContentGuard patents related to DRM technologies. And again, ZTE Corporation ignored ContentGuard's amicable attempts at licensing its intellectual property to ZTE Corporation. On February 14, 2012, in ContentGuard's final attempt to amicably license its patents to Defendants, Mr. Baker again contacted ZTE Corporation, and again highlighted ZTE Corporation's infringing use of ContentGuard's DRM patents. A representative at ZTE (USA) Inc. responded to Mr. Baker's correspondence via email, and then Mr. Baker offered to provide claim charts and meet with ZTE (USA) Inc. as soon as ZTE (USA) Inc. had completed a non-disclosure agreement ("NDA") with ContentGuard. Mr. Baker additionally sent ZTE (USA) Inc. a NDA in the hopes of initiating licensing discussions. Although ZTE (USA) Inc. received the NDA, it has offered no further response to Mr. Baker's request for licensing discussions. Defendants' infringement of the '160 patent, made with knowledge of and/or willful blindness toward the '160 patent, thus has been and continues to be willful and deliberate. Defendants' willful and deliberate infringement entitles Plaintiff to enhanced damages under 35 U.S.C. § 284.

29. Unless and until enjoined by this Court, Defendants will continue to infringe the '160 patent. Defendants' infringement is causing and will continue to cause Plaintiff irreparable harm, for which there is no adequate remedy at law. Under 35 U.S.C. § 283, Plaintiff is entitled to a permanent injunction against further infringement.

## FOURTH CAUSE OF ACTION

## (Patent Infringement of the '576 Patent)

30. Paragraphs 1 through 29 are incorporated by reference as if fully stated herein.

31. Defendants have infringed and continue to infringe, literally or under the doctrine of equivalents, the '576 patent by making, using, selling, offering for sale within the United States, and/or importing into the United States, products that are covered by one or more claims of the '576 patent. Such products include certain mobile communication and computing devices such as cellular phones, smart phones, and tablets, including but not limited to the AT&T Avail (ZTE Z990).

32. Upon information and belief, Defendants have, and have had, knowledge of the '576 patent and of their infringement thereof at least as early as May 6, 2009. On that date, Mr. Kerry Philip Miller, the General Counsel of Intellectual Property for ContentGuard, sent correspondence to ZTE Corporation detailing ContentGuard's portfolio of patents related to DRM technologies, including a link to the full list of ContentGuard's DRM patents. Mr. Miller further notified ZTE Corporation regarding its infringing use of ContentGuard's intellectual property, and attempted to initiate licensing discussions among the parties. ZTE Corporation, however, ignored Mr. Miller's correspondence. Thereafter, in correspondence dated March 21, 2011, Mr. James Baker, the Vice President of Licensing & Strategic Development for ContentGuard, again contacted ZTE Corporation regarding its infringing use of ContentGuard's patents related to DRM technologies, including the '859 patent, which claims priority to the same patent application as the '576 patent. Mr. Baker again provided ZTE Corporation with the link to the complete list of ContentGuard's patents related to DRM technologies, highlighted ZTE Corporation's infringing use of ContentGuard's patents and requested licensing discussions. Again, however, ZTE Corporation ignored ContentGuard's amicable attempts at licensing its

intellectual property to ZTE Corporation. Later, in correspondence dated September 15, 2011, Mr. Baker again contacted ZTE Corporation regarding its infringing use of ContentGuard's patents related to DRM technologies, and again provided ZTE Corporation with the link to the complete list of ContentGuard patents related to DRM technologies. And again, ZTE Corporation ignored ContentGuard's amicable attempts at licensing its intellectual property to ZTE Corporation. On February 14, 2012, in ContentGuard's final attempt to amicably license its patents to Defendants, Mr. Baker again contacted ZTE Corporation, and again highlighted ZTE Corporation's infringing use of ContentGuard's DRM patents. A representative at ZTE (USA) Inc. responded to Mr. Baker's correspondence via email, and then Mr. Baker offered to provide claim charts and meet with ZTE (USA) Inc. as soon as ZTE (USA) Inc. had completed a non-disclosure agreement ("NDA") with ContentGuard. Mr. Baker additionally sent ZTE (USA) Inc. a NDA in the hopes of initiating licensing discussions. Although ZTE (USA) Inc. received the NDA, it has offered no further response to Mr. Baker's request for licensing discussions. Defendants' infringement of the '576 patent, made with knowledge of and/or willful blindness toward the '576 patent, thus has been and continues to be willful and deliberate. Defendants' willful and deliberate infringement entitles Plaintiff to enhanced damages under 35 U.S.C. § 284.

33. Unless and until enjoined by this Court, Defendants will continue to infringe the '576 patent. Defendants' infringement is causing and will continue to cause Plaintiff irreparable harm, for which there is no adequate remedy at law. Under 35 U.S.C. § 283, Plaintiff is entitled to a permanent injunction against further infringement.

## FIFTH CAUSE OF ACTION

### (Patent Infringement of the '884 Patent)

34. Paragraphs 1 through 33 are incorporated by reference as if fully stated herein.

35. Defendants have infringed and continue to infringe, literally or under the doctrine of equivalents, the '884 patent by making, using, selling, offering for sale within the United States, and/or importing into the United States, products that are covered by one or more claims of the '884 patent. Such products include certain mobile communication and computing devices such as cellular phones, smart phones, and tablets, including but not limited to the AT&T Avail (ZTE Z990).

36. Upon information and belief, Defendants have, and have had, knowledge of the '884 patent and of their infringement thereof at least as early as May 6, 2009. On that date, Mr. Kerry Philip Miller, the General Counsel of Intellectual Property for ContentGuard, sent correspondence to ZTE Corporation detailing ContentGuard's portfolio of patents related to DRM technologies, including a link to the full list of ContentGuard's DRM patents. Mr. Miller further notified ZTE Corporation regarding its infringing use of ContentGuard's intellectual property, and attempted to initiate licensing discussions among the parties. ZTE Corporation, however, ignored Mr. Miller's correspondence. Thereafter, in correspondence dated March 21, 2011, Mr. James Baker, the Vice President of Licensing & Strategic Development for ContentGuard, again contacted ZTE Corporation regarding its infringing use of ContentGuard's patents related to DRM technologies. Mr. Baker again provided ZTE Corporation with the link to the complete list of ContentGuard patents related to DRM technologies, highlighted ZTE Corporation's infringing use of ContentGuard's patents and requested licensing discussions. Again, however, ZTE Corporation ignored ContentGuard's amicable attempts at licensing its intellectual property to ZTE Corporation. Later, in correspondence dated September 15, 2011, Mr. Baker again contacted ZTE Corporation regarding its infringing use of ContentGuard's patents related to DRM technologies, and again provided ZTE Corporation with the link to the

complete list of ContentGuard's patents related to DRM technologies. And again, ZTE Corporation ignored ContentGuard's amicable attempts at licensing its intellectual property to ZTE Corporation. On February 14, 2012, in ContentGuard's final attempt to amicably license its patents to Defendants, Mr. Baker again contacted ZTE Corporation, and again highlighted ZTE Corporation's infringing use of ContentGuard's DRM patents. A representative at ZTE (USA) Inc. responded to Mr. Baker's correspondence via email, and then Mr. Baker offered to provide claim charts and meet with ZTE (USA) Inc. as soon as ZTE (USA) Inc. had completed a non-disclosure agreement ("NDA") with ContentGuard. Mr. Baker additionally sent ZTE (USA) Inc. a NDA in the hopes of initiating licensing discussions. Although ZTE (USA) Inc. received the NDA, it has offered no further response to Mr. Baker's request for licensing discussions. Defendants' infringement of the '884 patent, made with knowledge of and/or willful blindness toward the '884 patent, thus has been and continues to be willful and deliberate. Defendants' willful and deliberate infringement entitles Plaintiff to enhanced damages under 35 U.S.C. § 284.

37. Unless and until enjoined by this Court, Defendants will continue to infringe the '884 patent. Defendants' infringement is causing and will continue to cause Plaintiff irreparable harm, for which there is no adequate remedy at law. Under 35 U.S.C. § 283, Plaintiff is entitled to a permanent injunction against further infringement.

### SIXTH CAUSE OF ACTION
#### (Patent Infringement of the '072 Patent)

38. Paragraphs 1 through 37 are incorporated by reference as if fully stated herein.

39. Defendants have infringed and continue to infringe, literally or under the doctrine of equivalents, the '072 patent by making, using, selling, offering for sale within the United States, and/or importing into the United States, products that are covered by one or more claims of the '072 patent. Such products include certain mobile communication and computing devices

such as cellular phones, smart phones, and tablets, including but not limited to the Sprint ZTE Optik and AT&T Avail (ZTE Z990).

40. Upon information and belief, Defendants have, and have had, knowledge of the '072 patent and of their infringement thereof at least as early as May 6, 2009. On that date, Mr. Kerry Philip Miller, the General Counsel of Intellectual Property for ContentGuard, sent correspondence to ZTE Corporation detailing ContentGuard's portfolio of patents related to DRM technologies, including a link to the full list of ContentGuard's DRM patents. Mr. Miller further notified ZTE Corporation regarding its infringing use of ContentGuard's intellectual property, and attempted to initiate licensing discussions among the parties. ZTE Corporation, however, ignored Mr. Miller's correspondence. Thereafter, in correspondence dated March 21, 2011, Mr. James Baker, the Vice President of Licensing & Strategic Development for ContentGuard, again contacted ZTE Corporation regarding its infringing use of ContentGuard's patents related to DRM technologies, including the '859 patent, which claims priority to the same patent application as the '072 patent. Mr. Baker again provided ZTE Corporation with the link to the complete list of ContentGuard's patents related to DRM technologies, highlighted ZTE Corporation's infringing use of ContentGuard's patents and requested licensing discussions. Again, however, ZTE Corporation ignored ContentGuard's amicable attempts at licensing its intellectual property to ZTE Corporation. Later, in correspondence dated September 15, 2011, Mr. Baker again contacted ZTE Corporation regarding its infringing use of ContentGuard's patents related to DRM technologies, and again provided ZTE Corporation with the link to the complete list of ContentGuard patents related to DRM technologies. And again, ZTE Corporation ignored ContentGuard's amicable attempts at licensing its intellectual property to ZTE Corporation. On February 14, 2012, in ContentGuard's final attempt to amicably license its

patents to Defendants, Mr. Baker again contacted ZTE Corporation, and again highlighted ZTE Corporation's infringing use of ContentGuard's DRM patents. A representative at ZTE (USA) Inc. responded to Mr. Baker's correspondence via email, and then Mr. Baker offered to provide claim charts and meet with ZTE (USA) Inc. as soon as ZTE (USA) Inc. had completed a non-disclosure agreement ("NDA") with ContentGuard. Mr. Baker additionally sent ZTE (USA) Inc. a NDA in the hopes of initiating licensing discussions. Although ZTE (USA) Inc. received the NDA, it has offered no further response to Mr. Baker's request for licensing discussions. Defendants' infringement of the '072 patent, made with knowledge of and/or willful blindness toward the '072 patent, thus has been and continues to be willful and deliberate. Defendants' willful and deliberate infringement entitles Plaintiff to enhanced damages under 35 U.S.C. § 284.

41. Unless and until enjoined by this Court, Defendants will continue to infringe the '072 patent. Defendants' infringement is causing and will continue to cause Plaintiff irreparable harm, for which there is no adequate remedy at law. Under 35 U.S.C. § 283, Plaintiff is entitled to a permanent injunction against further infringement.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff ContentGuard prays for the following judgment and relief against Defendants:

(A) That Defendants have infringed each and every one of the Asserted Patents;

(B) That Defendants, their officers, agents, employees, and those persons in active concert or participation with any of them, and their successors and assigns, be permanently enjoined from infringement, inducement of infringement, and contributory infringement of each and every one of the Asserted Patents, including but not limited to an injunction against making,

16

using, selling, and/or offering for sale within the United States, and/or importing into the United States, any products and/or services that infringe the Asserted Patents;

(C) That ContentGuard be awarded all damages adequate to compensate it for Defendants' infringement of the Asserted Patents, such damages to be determined by a jury, and if necessary to adequately compensate ContentGuard for the infringement, an accounting;

(D) That ContentGuard be awarded treble damages and pre-judgment and post-judgment interest at the maximum rate allowed by law;

(E) That this case be declared an exceptional case within the meaning of 35 U.S.C. § 285 and that ContentGuard be awarded attorneys fees, costs, and expenses incurred in connection with this action;

(F) That ContentGuard be awarded such other and further relief as this Court deems just and proper.

## JURY DEMAND

In accordance with Rule 38 of the Federal Rules of Civil Procedure, Plaintiff respectfully demands a jury trial of all issues triable to a jury in this action.

| Dated: February 27, 2012 | Respectfully submitted,<br><br>By: _____<br>Craig C. Reilly, Esq.<br>VSB # 20942<br>111 Oronoco Street<br>Alexandria, Virginia 22314<br>TEL (703) 549-5354<br>FAX (703) 549-2604<br>craig.reilly@ccreillylaw.com<br><br>**ATTORNEY FOR PLAINTIFF**<br>**CONTENTGUARD HOLDINGS, INC.** |
|---|---|