**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**ALEXANDRIA DIVISION**

| | |
|---|---|
| ContentGuard Holdings, Inc.,       ) | |
|                      ) | |
|         *Plaintiff*,       ) | |
|                      ) | |
|       vs.           ) | CA No. 1:12-cv-00206-CMH-TCB |
|                      ) | |
| ZTE Corporation and ZTE (USA) Inc.,  ) | JURY TRIAL DEMANDED |
|                      ) | |
|       *Defendants*.     ) | |
|                      ) | |
|                      ) | |
|                      ) | |
| _____ ) | |

## FIRST AMENDED COMPLAINT FOR PATENT INFRINGEMENT

Pursuant to Rule 15(a)(1)(B), Plaintiff ContentGuard Holdings, Inc. ("ContentGuard"), for its First Amended Complaint against ZTE Corporation and ZTE Corporation (USA) Inc. (collectively, "Defendants") hereby amends its complaint as a matter of right, and alleges as follows:

### The Parties

1.    Plaintiff ContentGuard is a corporation organized under the laws of the state of Delaware with its principal place of business at 222 N. Sepulveda Blvd., Suite 1400, El Segundo CA, 90245-5644. Having originated from within the legendary Xerox PARC, ContentGuard is an industry leading expert in digital rights management ("DRM") innovations. ContentGuard's highly skilled computer scientists have pioneered a vast array of DRM-related technologies and, as recognition for their achievements, have been awarded more than 260 patents. Now, having evolved from a purely R&D company, ContentGuard focuses on licensing and enabling the

market in DRM technologies.  ContentGuard's long history of innovation in the DRM space makes it well suited to educate, enable, and promote DRM technologies in today's marketplace. Indeed, recognizing the value of ContentGuard's DRM patents, a diverse array of prominent technology companies—including Casio, NEC, Panasonic, and Sharp—have chosen to license ContentGuard's patents.  Through their licensing partnerships with ContentGuard, these, and other leading technology companies have gained invaluable access to ContentGuard's many advances in DRM technologies.

2.      Upon information and belief, Defendant ZTE Corporation is a joint stock limited company incorporated in the People's Republic of China with its principal place of business at ZTE Plaza, Keji Road South, Hi-Tech Industrial Park, Nanshan District, Shenzhen, Guangdong Province, 518057 People's Republic of China.

3.      Upon information and belief, Defendant ZTE (USA) Inc. is a Corporation organized and existing under the laws of the state of New Jersey with its principal place of business at 2425 North Central Expressway, Suite 323, Richardson, Texas 75080.

4.      Defendants directly or indirectly use, distribute, market, sell, and/or offer to sell throughout the United States, including in this judicial district, various telecommunication and other consumer products, including wireless communication and mobile computing devices, associated equipment, and software.

## Nature of the Action

5.      This is an action brought by ContentGuard against Defendants for Defendants' infringement of ContentGuard's patents.

## Jurisdiction and Venue

6.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a) because this action arises under the patent laws of the United States.

7.      This Court has personal jurisdiction over the Defendants because the Defendants have established minimum contacts with this judicial district.  Defendants report having an office in this judicial district located in Herndon, Virginia; conduct substantial business in this judicial district, and regularly solicit business from, do business with and derive revenue from goods and services provided to, customers in this district; and have committed acts of infringement in this judicial district that remain ongoing.   Defendants, directly and/or through third-party manufacturers, manufacture or assemble products that are and have been offered for sale, sold, purchased, and used within this judicial district.  Defendants have publicized their business dealings in this judicial district, including a 2007 contract signing ceremony between Mr. Hou Wei-Gui, chairman of ZTE Corporation and Sprint Nextel Corporation ("Sprint") at Sprint's Herndon, Virginia offices.  In addition, Defendant ZTE Corporation is an active member of the Third Generation Partnership Project 2 (3GPP2), an international research organization responsible for setting the international standards for third-generation wireless technology, which is based in Arlington, Virginia.  ZTE Corporation is also a member of the Telecommunications Industry Association headquartered in Arlington, Virginia.

8.      Given that Defendants transact business, provide services, and have committed acts of patent infringement in this judicial district, Defendants have minimum contacts with this district such that the exercise of jurisdiction over Defendants would not offend traditional notions of fair play and substantial justice.   Venue is thus proper in this district pursuant to 28 U.S.C. §§ 1391(b), (c), (d) and 1400(b).

## The Patents in Suit

9.      On November 8, 2005, the United States Patent and Trademark Office duly and legally issued U.S. Patent No. 6,963,859 ("the '859 patent"), entitled "Content Rendering Repository."  A true and correct copy of the '859 patent is attached hereto as Exhibit A.

10.     On November 21, 2006, the United States Patent and Trademark Office duly and legally issued U.S. Patent No. 7,139,736 ("the '736 patent"), entitled "Content Rendering Repository."  A true and correct copy of the '736 patent is attached hereto as Exhibit B.

11.     On May 29, 2007, the United States Patent and Trademark Office duly and legally issued U.S. Patent No. 7,225,160 ("the '160 patent"), entitled "Digital Works Having Usage Rights And Method For Creating The Same."  A true and correct copy of the '160 patent is attached hereto as Exhibit C.

12.     On September 11, 2007, the United States Patent and Trademark Office duly and legally issued U.S. Patent No. 7,269,576 ("the '576 patent"), entitled "Content Rendering Apparatus."  A true and correct copy of the '576 patent is attached hereto as Exhibit D.

13.     On April 15, 2008, the United States Patent and Trademark Office duly and legally issued U.S. Patent No. 7,359,884 ("the '884 patent"), entitled "Method And Apparatus For Processing Usage Rights Expressions."  A true and correct copy of the '884 patent is attached hereto as Exhibit E.

14.     On April 21, 2009, the United States Patent and Trademark Office duly and legally issued U.S. Patent No. 7,523,072 ("the '072 patent"), entitled "System For Controlling The Distribution And Use Of Digital Works."  A true and correct copy of the '072 patent is attached hereto as Exhibit F.

15.     ContentGuard owns by assignment the entire right, title, and interest in and to the the '859 patent, the '736 patent, the '160 patent, the '576 patent, the '884 patent, and the '072 patent (collectively, "the Asserted Patents").

16.     All of the Asserted Patents are valid and enforceable.

17.     Upon information and belief, Defendants have infringed and continue to infringe one or more claims of each of the Asserted Patents by engaging in acts that constitute infringement under 35 U.S.C. § 271, including but not necessarily limited to making, using, selling, and/or offering for sale, in this district and elsewhere in the United States, and/or importing into this district and elsewhere in the United States, certain mobile communication and computing devices including cellular phones, smart phones, and tablets (collectively, "the Accused Products").

## FIRST CAUSE OF ACTION

### (Patent Infringement of the '859 Patent)

18.     Paragraphs 1 through 17 are incorporated by reference as if fully stated herein.

19.     Defendants have infringed and continue to infringe, literally or under the doctrine of equivalents, the '859 patent by making, using, selling, offering for sale within the United States, and/or importing into the United States, products that are covered by one or more claims of the '859 patent.  Such products include certain mobile communication and computing devices such as cellular phones, smart phones, and tablets, including but not limited to the Sprint ZTE Optik, ZTE Warp (N860), ZTE Chorus (D930), ZTE Score (X500), ZTE Agent (E520), Cricket MSGM8 II, ZTE Essenze (C70), and ZTE C78 ("the Accused '859 Products").

20.     Upon information and belief, Defendants have, and have had, knowledge of the '859 patent and of their infringement thereof at least as early as May 6, 2009.  On that date, Mr. Kerry Philip Miller, the General Counsel of Intellectual Property for ContentGuard, sent correspondence to ZTE Corporation detailing ContentGuard's portfolio of patents related to DRM technologies, including a link to the full list of ContentGuard's DRM patents, which upon information and belief included the '859 patent.  Mr. Miller further notified ZTE Corporation regarding its infringing use of ContentGuard's intellectual property, and attempted to initiate

licensing discussions among the parties.   ZTE Corporation, however, ignored Mr. Miller's correspondence.   Thereafter, in correspondence dated March 21, 2011, Mr. James Baker, the Vice President of Licensing & Strategic Development for ContentGuard, again contacted ZTE Corporation regarding its infringing use of ContentGuard's patents related to DRM technologies. Mr. Baker again provided ZTE Corporation with the link to the complete list of ContentGuard patents related to DRM technologies, highlighted ZTE Corporation's infringing use of ContentGuard's patents, including ZTE Corporation's infringement of the '859 patent, and requested licensing discussions.   Again, however, ZTE Corporation ignored ContentGuard's amicable attempts at licensing its intellectual property to ZTE Corporation.   Later, in correspondence dated September 15, 2011, Mr. Baker again contacted ZTE Corporation regarding its infringing use of ContentGuard's patents related to DRM technologies, including the '859 patent.   And again, ZTE Corporation ignored ContentGuard's amicable attempts at licensing its intellectual property to ZTE Corporation.   On February 14, 2012, in ContentGuard's final attempt to amicably license its patents to Defendants, Mr. Baker again contacted ZTE Corporation, highlighted that use of DRM technology on ZTE Corporation's products infringed ContentGuard's DRM patents, including the '859 patent, and again provided the link to the full list of ContentGuard's DRM patents.   A representative at ZTE (USA) Inc. responded to Mr. Baker's correspondence via email, and then Mr. Baker offered to provide claim charts and meet with ZTE (USA) Inc. as soon as ZTE (USA) Inc. had completed a non-disclosure agreement ("NDA") with ContentGuard.   Mr. Baker additionally sent ZTE (USA) Inc. a NDA in the hopes of initiating licensing discussions.   Although ZTE (USA) Inc. received the NDA, it has offered no further response to Mr. Baker's request for licensing discussions.

21.     Defendants have induced, and continue to induce, end users of the Accused '859 Products ("'859 End Users") to directly infringe the '859 patent, in violation of 35 U.S.C. § 271(b).  Upon information and belief, these '859 End Users directly infringe the '859 patent by using functionalities of the Accused '859 Products that implement DRM technology covered by one or more claims of the '859 patent.  Defendants actively induce '859 End Users to directly infringe the '859 patent by, among other things, advertising and promoting on Defendants' websites functionalities of the Accused '859 Products that implement DRM technology covered by one or more claims of the '859 patent.  Defendants also actively induce '859 End Users to directly infringe the '859 patent through promotional and instructional documentation, including documentation packaged with the Accused '859 Products, that encourages '859 End Users to use functionalities of the Accused '859 Products that implement DRM technology covered by one or more claims of the '859 patent and instructs them how to do so.  Defendants' active inducement of infringement has been, and continues to be, done with knowledge of and/or willful blindness to both the existence of the '859 patent and that the '859 End Users' use of the Accused '859 Products infringes the '859 patent, and with the specific intent that '859 End Users infringe the '859 patent.

22.     Defendants have contributed, and continue to contribute, to the direct infringement of the '859 patent by '859 End Users, in violation of 35 U.S.C. § 271(c).  Defendants sell and/or offer to sell within, and/or import into, this district and elsewhere in the United States, components implementing DRM technology that are a material part of apparatuses, systems, and/or methods taught by the '859 patent, knowing that those components are especially made or adapted for use in infringement of the '859 patent and are not a staple article or commodity of commerce suitable for substantial non-infringing use.  Such components

include, but are not limited to, the Muve Music service provided with certain Accused '859 Products (e.g., the ZTE Chorus (D930) and ZTE Score (X500)). Those components are not staple items of commerce and are not suitable for substantial non-infringing use because they are especially designed to implement DRM technology covered by one or more claims of the '859 patent, on mobile communication and computing devices including cellular phones, smart phones, and tablets, such as the Accused '859 Products.

23. Defendants' infringement of the '859 patent, made with knowledge of and/or objective recklessness toward the '859 patent and their infringement thereof, has been and continues to be willful and deliberate. Defendants' willful and deliberate infringement entitles Plaintiff to enhanced damages under 35 U.S.C. § 284.

24. Unless and until enjoined by this Court, Defendants will continue to infringe the '859 patent. Defendants' infringement is causing and will continue to cause Plaintiff irreparable harm, for which there is no adequate remedy at law. Under 35 U.S.C. § 283, Plaintiff is entitled to a permanent injunction against further infringement.

## SECOND CAUSE OF ACTION

### (Patent Infringement of the '736 Patent)

25. Paragraphs 1 through 24 are incorporated by reference as if fully stated herein.

26. Defendants have infringed and continue to infringe, literally or under the doctrine of equivalents, the '736 patent by making, using, selling, offering for sale within the United States, and/or importing into the United States, products that are covered by one or more claims of the '736 patent. Such products include certain mobile communication and computing devices such as cellular phones, smart phones and tablets, including but not limited to the Sprint ZTE Optik, ZTE Warp (N860), ZTE Chorus (D930), ZTE Score (X500), ZTE Agent (E520), Cricket MSGM8 II, ZTE Essence (C70), and ZTE C78 ("the Accused '736 Products").

8

27.     Upon information and belief, Defendants have, and have had, knowledge of the '736 patent and of their infringement thereof at least as early as May 6, 2009.  On that date, Mr. Kerry Philip Miller, the General Counsel of Intellectual Property for ContentGuard, sent correspondence to ZTE Corporation detailing ContentGuard's portfolio of patents related to DRM technologies, including a link to the full list of ContentGuard's DRM patents, which upon information and belief included the '736 patent.  Mr. Miller further notified ZTE Corporation regarding its infringing use of ContentGuard's intellectual property, and attempted to initiate licensing discussions among the parties.  ZTE Corporation, however, ignored Mr. Miller's correspondence.  Thereafter, in correspondence dated March 21, 2011, Mr. James Baker, the Vice President of Licensing & Strategic Development for ContentGuard, again contacted ZTE Corporation regarding its infringing use of ContentGuard's patents related to DRM technologies, including the '859 patent, which claims priority to the same patent application as the '736 patent. Mr. Baker again provided ZTE Corporation with the link to the complete list of ContentGuard's patents related to DRM technologies, highlighted ZTE Corporation's infringing use of ContentGuard's patents and requested licensing discussions.  Again, however, ZTE Corporation ignored ContentGuard's amicable attempts at licensing its intellectual property to ZTE Corporation.  Later, in correspondence dated September 15, 2011, Mr. Baker again contacted ZTE Corporation regarding its infringing use of ContentGuard's patents related to DRM technologies.   And again, ZTE Corporation ignored ContentGuard's amicable attempts at licensing its intellectual property to ZTE Corporation.  On February 14, 2012, in ContentGuard's final attempt to amicably license its patents to Defendants, Mr. Baker again contacted ZTE Corporation, highlighted that use of DRM technology on ZTE Corporation's products infringed ContentGuard's DRM patents, and again provided the link to the full list of ContentGuard's DRM

patents.  A representative at ZTE (USA) Inc. responded to Mr. Baker's correspondence via email, and then Mr. Baker offered to provide claim charts and meet with ZTE (USA) Inc. as soon as ZTE (USA) Inc. had completed a non-disclosure agreement ("NDA") with ContentGuard.  Mr. Baker additionally sent ZTE (USA) Inc. a NDA in the hopes of initiating licensing discussions.  Although ZTE (USA) Inc. received the NDA, it has offered no further response to Mr. Baker's request for licensing discussions.

28.    Defendants have induced, and continue to induce, end users of the Accused '736 Products ("'736 End Users") to directly infringe the '736 patent, in violation of 35 U.S.C. § 271(b).  Upon information and belief, these end users directly infringe the '736 patent by using functionalities of the Accused '736 Products that implement DRM technology covered by one or more claims of the '736 patent.  Defendants actively induce '736 End Users to directly infringe the '736 patent by, among other things, advertising and promoting on Defendants' websites functionalities of the Accused '736 Products that implement DRM technology covered by one or more claims of the '736 patent.  Defendants also actively induce '736 End Users to directly infringe the '736 patent through promotional and instructional documentation, including documentation packaged with the Accused '736 Products, that encourages '736 End Users to use functionalities of the Accused '736 Products that implement DRM technology covered by one or more claims of the '736 patent and instructs them how to do so.  Defendants' active inducement of infringement has been, and continues to be, done with knowledge of and/or willful blindness to both the existence of the '736 patent and that the '736 End Users' use of the Accused '736 Products infringes the '736 patent, and with the specific intent that '736 End Users infringe the '736 patent.

29.     Defendants have contributed, and continue to contribute, to the direct infringement of the '736 patent by '736 End Users, in violation of 35 U.S.C. § 271(c). Defendants sell and/or offer to sell within, and/or import into, this district and elsewhere in the United States, components implementing DRM technology that are a material part of apparatuses, systems, and/or methods taught by the '736 patent, knowing that those components are especially made or adapted for use in infringement of the '736 patent and are not a staple article or commodity of commerce suitable for substantial non-infringing use.  Such components include, but are not limited to, the Muve Music service provided with certain Accused '736 Products (e.g., the ZTE Chorus (D930) and ZTE Score (X500)).  Those components are not staple items of commerce and are not suitable for substantial non-infringing use because they are especially designed to implement DRM technology covered by one or more claims of the '736 patent, on mobile communication and computing devices including cellular phones, smart phones, and tablets, such as the Accused '736 Products.

30.     Defendants' infringement of the '736 patent, made with knowledge of and/or objective recklessness toward the '736 patent and their infringement thereof, has been and continues to be willful and deliberate.  Defendants' willful and deliberate infringement entitles Plaintiff to enhanced damages under 35 U.S.C. § 284.

31.     Unless and until enjoined by this Court, Defendants will continue to infringe the '736 patent.  Defendants' infringement is causing and will continue to cause Plaintiff irreparable harm, for which there is no adequate remedy at law.  Under 35 U.S.C. § 283, Plaintiff is entitled to a permanent injunction against further infringement.

## THIRD CAUSE OF ACTION

### (Patent Infringement of the '160 Patent)

32.     Paragraphs 1 through 31 are incorporated by reference as if fully stated herein.

33.     Defendants have infringed and continue to infringe, literally or under the doctrine of equivalents, the '160 patent by making, using, selling, offering for sale within the United States, and/or importing into the United States, products that are covered by one or more claims of the '160 patent.  Such products include certain mobile communication and computing devices such as the Sprint ZTE Optik ("the Accused '160 Products").

34.     Upon information and belief, Defendants have, and have had, knowledge of the '160 patent and of their infringement thereof at least as early as May 6, 2009.  On that date, Mr. Kerry Philip Miller, the General Counsel of Intellectual Property for ContentGuard, sent correspondence to ZTE Corporation detailing ContentGuard's portfolio of patents related to DRM technologies, including a link to the full list of ContentGuard's DRM patents, which upon information and belief included the '160 patent.  Mr. Miller further notified ZTE Corporation regarding its infringing use of ContentGuard's intellectual property, and attempted to initiate licensing discussions among the parties.  ZTE Corporation, however, ignored Mr. Miller's correspondence.  Thereafter, in correspondence dated March 21, 2011, Mr. James Baker, the Vice President of Licensing & Strategic Development for ContentGuard, again contacted ZTE Corporation regarding its infringing use of ContentGuard's patents related to DRM technologies, including the '859 patent, which claims priority to the same patent application as the '160 patent. Mr. Baker again provided ZTE Corporation with the link to the complete list of ContentGuard's patents related to DRM technologies, highlighted ZTE Corporation's infringing use of ContentGuard's patents and requested licensing discussions.  Again, however, ZTE Corporation ignored ContentGuard's amicable attempts at licensing its intellectual property to ZTE Corporation.  Later, in correspondence dated September 15, 2011, Mr. Baker again contacted ZTE Corporation regarding its infringing use of ContentGuard's patents related to DRM

technologies.   And again, ZTE Corporation ignored ContentGuard's amicable attempts at licensing its intellectual property to ZTE Corporation.  On February 14, 2012, in ContentGuard's final attempt to amicably license its patents to Defendants, Mr. Baker again contacted ZTE Corporation, highlighted that use of DRM technology on ZTE Corporation's products infringed ContentGuard's DRM patents, and again provided the link to the full list of ContentGuard's DRM patents.  A representative at ZTE (USA) Inc. responded to Mr. Baker's correspondence via email, and then Mr. Baker offered to provide claim charts and meet with ZTE (USA) Inc. as soon as ZTE (USA) Inc. had completed a non-disclosure agreement ("NDA") with ContentGuard.  Mr. Baker additionally sent ZTE (USA) Inc. a NDA in the hopes of initiating licensing discussions. Although ZTE (USA) Inc. received the NDA, it has offered no further response to Mr. Baker's request for licensing discussions.

35.     Defendants have induced, and continue to induce, end users of the Accused '160 Products ("'160 End Users") to directly infringe the '160 patent, in violation of 35 U.S.C. § 271(b).  Upon information and belief, these '160 End Users directly infringe the '160 patent by using functionalities of the Accused '160 Products that implement DRM technology covered by one or more claims of the '160 patent.  Defendants actively induce '160 End Users to directly infringe the '160 patent by, among other things, advertising and promoting on Defendants' websites functionalities of the Accused '160 Products that implement DRM technology covered by one or more claims of the '160 patent.  Defendants also actively induce '160 End Users to directly infringe the '160 patent through promotional and instructional documentation, including documentation packaged with the Accused '160 Products, that encourages '160 End Users to use functionalities of the Accused '160 Products that implement DRM technology covered by one or more claims of the '160 patent and instructs them how to do so.  Defendants' active inducement

13

of infringement has been, and continues to be, done with knowledge of and/or willful blindness to both the existence of the '160 patent and that the '160 End Users' use of the Accused '160 Products infringes the '160 patent, and with the specific intent that '160 End Users infringe the '160 patent.

36.     Defendants have contributed, and continue to contribute, to the direct infringement of the '160 patent by '160 End Users, in violation of 35 U.S.C. § 271(c). Defendants sell and/or offer to sell within, and/or import into, this district and elsewhere in the United States, components implementing DRM technology that are a material part of apparatuses, systems, and/or methods taught by the '160 patent, knowing that those components are especially made or adapted for use in infringement of the '160 patent and are not a staple article or commodity of commerce suitable for substantial non-infringing use. Such components include, but are not limited to, the Google Books and/or Google Play Books applications that are preloaded onto certain Accused '160 Products (e.g., the Sprint ZTE Optik). Those components are not staple items of commerce and are not suitable for substantial non-infringing use because they are especially designed to implement DRM technology covered by one or more claims of the '160 patent, on mobile communication and computing devices including cellular phones, smart phones, and tablets, such as the Accused '160 Products.

37.     Defendants' infringement of the '160 patent, made with knowledge of and/or objective recklessness toward the '160 patent and their infringement thereof, has been and continues to be willful and deliberate. Defendants' willful and deliberate infringement entitles Plaintiff to enhanced damages under 35 U.S.C. § 284.

38.     Unless and until enjoined by this Court, Defendants will continue to infringe the '160 patent. Defendants' infringement is causing and will continue to cause Plaintiff irreparable

harm, for which there is no adequate remedy at law.  Under 35 U.S.C. § 283, Plaintiff is entitled to a permanent injunction against further infringement.

### FOURTH CAUSE OF ACTION

#### (Patent Infringement of the '576 Patent)

39.    Paragraphs 1 through 38 are incorporated by reference as if fully stated herein.

40.    Defendants have infringed and continue to infringe, literally or under the doctrine of equivalents, the '576 patent by making, using, selling, offering for sale within the United States, and/or importing into the United States, products that are covered by one or more claims of the '576 patent.  Such products include certain mobile communication and computing devices such as cellular phones, smart phones, and tablets, including but not limited to the AT&T Avail (ZTE Z990) ("the Accused '576 Products").

41.    Upon information and belief, Defendants have, and have had, knowledge of the '576 patent and of their infringement thereof at least as early as May 6, 2009.  On that date, Mr. Kerry Philip Miller, the General Counsel of Intellectual Property for ContentGuard, sent correspondence to ZTE Corporation detailing ContentGuard's portfolio of patents related to DRM technologies, including a link to the full list of ContentGuard's DRM patents, which upon information and belief included the '576 patent.  Mr. Miller further notified ZTE Corporation regarding its infringing use of ContentGuard's intellectual property, and attempted to initiate licensing discussions among the parties.  ZTE Corporation, however, ignored Mr. Miller's correspondence.  Thereafter, in correspondence dated March 21, 2011, Mr. James Baker, the Vice President of Licensing & Strategic Development for ContentGuard, again contacted ZTE Corporation regarding its infringing use of ContentGuard's patents related to DRM technologies, including the '859 patent, which claims priority to the same patent application as the '576 patent. Mr. Baker again provided ZTE Corporation with the link to the complete list of ContentGuard's

patents related to DRM technologies, highlighted ZTE Corporation's infringing use of ContentGuard's patents and requested licensing discussions. Again, however, ZTE Corporation ignored ContentGuard's amicable attempts at licensing its intellectual property to ZTE Corporation. Later, in correspondence dated September 15, 2011, Mr. Baker again contacted ZTE Corporation regarding its infringing use of ContentGuard's patents related to DRM technologies. And again, ZTE Corporation ignored ContentGuard's amicable attempts at licensing its intellectual property to ZTE Corporation. On February 14, 2012, in ContentGuard's final attempt to amicably license its patents to Defendants, Mr. Baker again contacted ZTE Corporation, highlighted that use of DRM technology on ZTE Corporation's products infringed ContentGuard's DRM patents, and again provided the link to the full list of ContentGuard's DRM patents. A representative at ZTE (USA) Inc. responded to Mr. Baker's correspondence via email, and then Mr. Baker offered to provide claim charts and meet with ZTE (USA) Inc. as soon as ZTE (USA) Inc. had completed a non-disclosure agreement ("NDA") with ContentGuard. Mr. Baker additionally sent ZTE (USA) Inc. a NDA in the hopes of initiating licensing discussions. Although ZTE (USA) Inc. received the NDA, it has offered no further response to Mr. Baker's request for licensing discussions.

42. Defendants have induced, and continue to induce, end users of the Accused '576 Products ("'576 End Users") to directly infringe the '576 patent, in violation of 35 U.S.C. § 271(b). Upon information and belief, these '576 End Users directly infringe the '576 patent by using functionalities of the Accused '576 Products that implement DRM technology covered by one or more claims of the '576 patent. Defendants actively induce '576 End Users to directly infringe the '576 patent by, among other things, advertising and promoting on Defendants' websites functionalities of the Accused '576 Products that implement DRM technology covered

by one or more claims of the '576 patent. Defendants also actively induce '576 End Users to directly infringe the '576 patent through, among other things, promotional and instructional documentation, including documentation packaged with the Accused '576 Products, that encourages '576 End Users to use functionalities of the Accused '576 Products that implement DRM technology covered by one or more claims of the '576 patent and instructs them how to do so. Defendants' active inducement of infringement has been, and continues to be, done with knowledge of and/or willful blindness to both the existence of the '576 patent and that the '576 End Users' use of the Accused '576 Products infringes the '576 patent, and with the specific intent that '576 End Users infringe the '576 patent.

43.    Defendants have contributed, and continue to contribute, to the direct infringement of the '576 patent by '576 End Users, in violation of 35 U.S.C. § 271(c). Defendants sell and/or offer to sell within, and/or import into, this district and elsewhere in the United States, components implementing DRM technology that are a material part of apparatuses, systems, and/or methods taught by the '576 patent, knowing that those components are especially made or adapted for use in infringement of the '576 patent and are not a staple article or commodity of commerce suitable for substantial non-infringing use. Such components include, but are not limited to, the AT&T U-Verse Live TV application that is preloaded onto certain Accused '576 Products (e.g., the AT&T Avail (ZTE Z990)). Those components are not staple items of commerce and are not suitable for substantial non-infringing use because they are especially designed to implement DRM technology covered by one or more claims of the '576 patent, on mobile communication and computing devices including cellular phones, smart phones, and tablets, such as the Accused '576 Products.

44.     Defendants' infringement of the '576 patent, made with knowledge of and/or objective recklessness toward the '576 patent and their infringement thereof, has been and continues to be willful and deliberate.  Defendants' willful and deliberate infringement entitles Plaintiff to enhanced damages under 35 U.S.C. § 284.

45.     Unless and until enjoined by this Court, Defendants will continue to infringe the '576 patent.  Defendants' infringement is causing and will continue to cause Plaintiff irreparable harm, for which there is no adequate remedy at law.  Under 35 U.S.C. § 283, Plaintiff is entitled to a permanent injunction against further infringement.

## FIFTH CAUSE OF ACTION

### (Patent Infringement of the '884 Patent)

46.     Paragraphs 1 through 45 are incorporated by reference as if fully stated herein.

47.     Defendants have infringed and continue to infringe, literally or under the doctrine of equivalents, the '884 patent by making, using, selling, offering for sale within the United States, and/or importing into the United States, products that are covered by one or more claims of the '884 patent.  Such products include certain mobile communication and computing devices such as cellular phones, smart phones, and tablets, including but not limited to the AT&T Avail (ZTE Z990) ("the Accused '884 Products").

48.     Upon information and belief, Defendants have, and have had, knowledge of the '884 patent and of their infringement thereof at least as early as May 6, 2009.  On that date, Mr. Kerry Philip Miller, the General Counsel of Intellectual Property for ContentGuard, sent correspondence to ZTE Corporation detailing ContentGuard's portfolio of patents related to DRM technologies, including a link to the full list of ContentGuard's DRM patents, which upon information and belief included the '884 patent.  Mr. Miller further notified ZTE Corporation regarding its infringing use of ContentGuard's intellectual property, and attempted to initiate

licensing discussions among the parties. ZTE Corporation, however, ignored Mr. Miller's correspondence. Thereafter, in correspondence dated March 21, 2011, Mr. James Baker, the Vice President of Licensing & Strategic Development for ContentGuard, again contacted ZTE Corporation regarding its infringing use of ContentGuard's patents related to DRM technologies. Mr. Baker again provided ZTE Corporation with the link to the complete list of ContentGuard patents related to DRM technologies, highlighted ZTE Corporation's infringing use of ContentGuard's patents and requested licensing discussions. Again, however, ZTE Corporation ignored ContentGuard's amicable attempts at licensing its intellectual property to ZTE Corporation. Later, in correspondence dated September 15, 2011, Mr. Baker again contacted ZTE Corporation regarding its infringing use of ContentGuard's patents related to DRM technologies. And again, ZTE Corporation ignored ContentGuard's amicable attempts at licensing its intellectual property to ZTE Corporation. On February 14, 2012, in ContentGuard's final attempt to amicably license its patents to Defendants, Mr. Baker again contacted ZTE Corporation, highlighted that use of DRM technology on ZTE Corporation's products infringed ContentGuard's DRM patents, and again provided the link to the full list of ContentGuard's DRM patents. A representative at ZTE (USA) Inc. responded to Mr. Baker's correspondence via email, and then Mr. Baker offered to provide claim charts and meet with ZTE (USA) Inc. as soon as ZTE (USA) Inc. had completed a non-disclosure agreement ("NDA") with ContentGuard. Mr. Baker additionally sent ZTE (USA) Inc. a NDA in the hopes of initiating licensing discussions. Although ZTE (USA) Inc. received the NDA, it has offered no further response to Mr. Baker's request for licensing discussions.

49. Defendants have induced, and continue to induce, end users of the Accused '884 Products ("'884 End Users") to directly infringe the '884 patent, in violation of 35 U.S.C.

§ 271(b).  Upon information and belief, these '884 End Users directly infringe the '884 patent by using functionalities of the Accused '884 Products that implement DRM technology covered by one or more claims of the '884 patent.  Defendants actively induce '884 End Users to directly infringe the '884 patent by, among other things, advertising and promoting on Defendants' websites functionalities of the Accused '884 Products that implement DRM technology covered by one or more claims of the '884 patent.  Defendants also actively induce '884 End Users to directly infringe the '884 patent through promotional and instructional documentation, including documentation packaged with the Accused '884 Products, that encourages '884 End Users to use functionalities of the Accused '884 Products that implement DRM technology covered by one or more claims of the '884 patent and instructs them how to do so.  Defendants' active inducement of infringement has been, and continues to be, done with knowledge of and/or willful blindness to both the existence of the '884 patent and that the '884 End Users' use of the Accused '884 Products infringes the '884 patent, and with the specific intent that '884 End Users infringe the '884 patent.

50.  Defendants have contributed, and continue to contribute, to the direct infringement of the '884 patent by '884 End Users, in violation of 35 U.S.C. § 271(c).  Defendants sell and/or offer to sell within, and/or import into, this district and elsewhere in the United States, components implementing DRM technology that are a material part of apparatuses, systems, and/or methods taught by the '884 patent, knowing that those components are especially made or adapted for use in infringement of the '884 patent and are not a staple article or commodity of commerce suitable for substantial non-infringing use.  Such components include, but are not limited to, software implementing DRM technology that is preloaded onto certain Accused '884 Products (e.g., the AT&T Avail (ZTE Z990)).  Those components are not

staple items of commerce and are not suitable for substantial non-infringing use because they are especially designed to implement DRM technology covered by one or more claims of the '884 patent, on mobile communication and computing devices including cellular phones, smart phones, and tablets, such as the Accused '884 Products.

51.     Defendants' infringement of the '884 patent, made with knowledge of and/or objective recklessness toward the '884 patent and their infringement thereof, has been and continues to be willful and deliberate.  Defendants' willful and deliberate infringement entitles Plaintiff to enhanced damages under 35 U.S.C. § 284.

52.     Unless and until enjoined by this Court, Defendants will continue to infringe the '884 patent.  Defendants' infringement is causing and will continue to cause Plaintiff irreparable harm, for which there is no adequate remedy at law.  Under 35 U.S.C. § 283, Plaintiff is entitled to a permanent injunction against further infringement.

## SIXTH CAUSE OF ACTION

### (Patent Infringement of the '072 Patent)

53.     Paragraphs 1 through 52 are incorporated by reference as if fully stated herein.

54.     Defendants have infringed and continue to infringe, literally or under the doctrine of equivalents, the '072 patent by making, using, selling, offering for sale within the United States, and/or importing into the United States, products that are covered by one or more claims of the '072 patent.  Such products include certain mobile communication and computing devices such as cellular phones, smart phones, and tablets, including but not limited to the Sprint ZTE Optik and AT&T Avail (ZTE Z990) ("the Accused '072 Products").

55.     Upon information and belief, Defendants have, and have had, knowledge of the '072 patent and of their infringement thereof at least as early as May 6, 2009.  On that date, Mr. Kerry Philip Miller, the General Counsel of Intellectual Property for ContentGuard, sent

correspondence to ZTE Corporation detailing ContentGuard's portfolio of patents related to DRM technologies, including a link to the full list of ContentGuard's DRM patents, which upon information and belief included the '072 patent.  Mr. Miller further notified ZTE Corporation regarding its infringing use of ContentGuard's intellectual property, and attempted to initiate licensing discussions among the parties.  ZTE Corporation, however, ignored Mr. Miller's correspondence.  Thereafter, in correspondence dated March 21, 2011, Mr. James Baker, the Vice President of Licensing & Strategic Development for ContentGuard, again contacted ZTE Corporation regarding its infringing use of ContentGuard's patents related to DRM technologies, including the '859 patent, which claims priority to the same patent application as the '072 patent. Mr. Baker again provided ZTE Corporation with the link to the complete list of ContentGuard's patents related to DRM technologies, highlighted ZTE Corporation's infringing use of ContentGuard's patents and requested licensing discussions.  Again, however, ZTE Corporation ignored ContentGuard's amicable attempts at licensing its intellectual property to ZTE Corporation.  Later, in correspondence dated September 15, 2011, Mr. Baker again contacted ZTE Corporation regarding its infringing use of ContentGuard's patents related to DRM technologies.  And again, ZTE Corporation ignored ContentGuard's amicable attempts at licensing its intellectual property to ZTE Corporation.  On February 14, 2012, in ContentGuard's final attempt to amicably license its patents to Defendants, Mr. Baker again contacted ZTE Corporation, highlighted that use of DRM technology on ZTE Corporation's products infringed ContentGuard's DRM patents, and again provided the link to the full list of ContentGuard's DRM patents.  A representative at ZTE (USA) Inc. responded to Mr. Baker's correspondence via email, and then Mr. Baker offered to provide claim charts and meet with ZTE (USA) Inc. as soon as ZTE (USA) Inc. had completed a non-disclosure agreement ("NDA") with ContentGuard.  Mr.

Baker additionally sent ZTE (USA) Inc. a NDA in the hopes of initiating licensing discussions. Although ZTE (USA) Inc. received the NDA, it has offered no further response to Mr. Baker's request for licensing discussions.

56. Defendants have induced, and continue to induce, end users of the Accused '072 Products ("'072 End Users") to directly infringe the '072 patent, in violation of 35 U.S.C. § 271(b). Upon information and belief, these '072 End Users directly infringe the '072 patent by using functionalities of the Accused '072 Products that implement DRM technology covered by one or more claims of the '072 patent. Defendants actively induce '072 End Users to directly infringe the '072 patent by, among other things, advertising and promoting on Defendants' websites functionalities of the Accused '072 Products that implement DRM technology covered by one or more claims of the '072 patent. Defendants also actively induce '072 End Users to directly infringe the '072 patent through, among other things, promotional and instructional documentation, including documentation packaged with the Accused '072 Products, that encourages '072 End Users to use functionalities of the Accused '072 Products that implement DRM technology covered by one or more claims of the '072 patent and instructs them how to do so. Defendants' active inducement of infringement has been, and continues to be, done with knowledge of and/or willful blindness to both the existence of the '072 patent and that the '072 End Users' use of the Accused '072 Products infringes the '072 patent, and with the specific intent that '072 End Users infringe the '072 patent.

57. Defendants have contributed, and continue to contribute, to the direct infringement of the '072 patent by '072 End Users, in violation of 35 U.S.C. § 271(c). Defendants sell within the United States, offer to sell within the United States, and/or import into the United States materials and/or apparatuses implementing DRM technology that are a material

23

part of processes taught by one or more claims of the '072 patent, knowing that those materials and/or apparatuses are especially made or adapted for use in infringement of the '072 patent and are not a staple article or commodity of commerce suitable for substantial non-infringing use. Such materials and/or apparatuses include, but are not limited to, the AT&T U-Verse Live TV application that is preloaded onto certain Accused '072 Products (e.g., the AT&T Avail (ZTE Z990)). Those materials and/or apparatuses are not staple items of commerce and are not suitable for substantial non-infringing use because they are especially designed to implement DRM technology covered by one or more claims of the '072 patent, on mobile communication and computing devices including cellular phones, smart phones, and tablets, such as the Accused '072 Products.

58.     Defendants' infringement of the '072 patent, made with knowledge of and/or objective recklessness toward the '072 patent and their infringement thereof, has been and continues to be willful and deliberate. Defendants' willful and deliberate infringement entitles Plaintiff to enhanced damages under 35 U.S.C. § 284.

59.     Unless and until enjoined by this Court, Defendants will continue to infringe the '072 patent. Defendants' infringement is causing and will continue to cause Plaintiff irreparable harm, for which there is no adequate remedy at law. Under 35 U.S.C. § 283, Plaintiff is entitled to a permanent injunction against further infringement.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff ContentGuard prays for the following judgment and relief against Defendants:

(A)     That Defendants have infringed each and every one of the Asserted Patents;

(B)     That Defendants, their officers, agents, employees, and those persons in active concert or participation with any of them, and their successors and assigns, be permanently enjoined from infringement, inducement of infringement, and contributory infringement of each and every one of the Asserted Patents, including but not limited to an injunction against making, using, selling, and/or offering for sale within the United States, and/or importing into the United States, any products and/or services that infringe the Asserted Patents;

(C)     That ContentGuard be awarded all damages adequate to compensate it for Defendants' infringement of the Asserted Patents, such damages to be determined by a jury, and if necessary to adequately compensate ContentGuard for the infringement, an accounting;

(D)     That ContentGuard be awarded treble damages and pre-judgment and post-judgment interest at the maximum rate allowed by law;

(E)     That this case be declared an exceptional case within the meaning of 35 U.S.C. § 285 and that ContentGuard be awarded attorneys fees, costs, and expenses incurred in connection with this action;

(F)     That ContentGuard be awarded such other and further relief as this Court deems just and proper.

## **JURY DEMAND**

In accordance with Rule 38 of the Federal Rules of Civil Procedure, Plaintiff respectfully demands a jury trial of all issues triable to a jury in this action.

| Dated: April 30, 2012 | Respectfully submitted,<br><br>By:  _/s/_____<br>Craig C. Reilly, Esq.<br>VSB # 20942<br>111 Oronoco Street<br>Alexandria, Virginia 22314<br>TEL (703) 549-5354<br>FAX (703) 549-2604<br>craig.reilly@ccreillylaw.com<br><br>Gregory S. Arovas (*pro hac vice*)<br>greg.arovas@kirkland.com<br>Todd M. Friedman (*pro hac vice*)<br>todd.friedman@kirkland.com<br>Michael J. Gulliford (*pro hac vice*)<br>michael.gulliford@kirkland.com<br>KIRKLAND & ELLIS LLP<br>601 Lexington Avenue<br>New York, NY 10022-4675<br>Telephone:  (212) 446-4800<br>Facsimile:  (212) 446-6460<br><br>**ATTORNEY FOR PLAINTIFF<br>CONTENTGUARD HOLDINGS, INC.** |
| --- | --- |

## CERTIFICATE OF SERVICE

I hereby certify that on this 30<u>th</u> day of April 2012, a true and correct copy of the foregoing pleading or paper was served using the Court's CM/ECF system, with electronic notification of such filing to counsel of record (*) and by electronic service on other counsel:

Jay H. Reiziss
BRINKS HOFER GILSON & LIONE
1850 K Street, NW, Suite 675
Washington, DC 20006-2219
Phone: 202-296-8700
Fax: 202-296-8701
Email: jreiziss@brinkshofer.com

*Co-Counsel for Defendants*

David H. Bluestone
Jon H. Beaupré
Jeremy S. Snodgrass
BRINKS HOFER GILSON & LIONE
NBC Tower, Suite 3600
455 North Cityfront Plaza Drive
Chicago, IL 60611-5599
Phone: 312-321-4200
Fax: 312-321-4299
Emails: jbeaupre@brinkshofer.com;
dbluestone@brinkshofer.com;
jsnodgrass@brinkshofer.com

*Co-Counsel for Defendants*

Bernard J. DiMuro *
DIMUROGINSBERG, P.C.
1101 King Street, Suite 610
Alexandria, VA 22314
Phone: 703-684-4333
Fax: 703-548-3181
Email: bdimuro@dimuro.com

*Counsel for Defendants*

/s/ Craig C. Reilly
Craig C. Reilly VSB # 20942
111 Oronoco Street
Alexandria, Virginia 22314
TEL:   (703) 549-5354
FAX:   (703) 549-2604
EMAIL: craig.reilly@ccreillylaw.com
*Counsel for Plaintiff*

27